Peters, P.J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of a Hearing Committee of respondent which granted petitioner’s request for restoration of his licence to practice medicine, subject to certain conditions.
Petitioner, a board-certified anesthesiologist, was licensed to practice medicine in New York in 2004. In August 2008, he was observed injecting himself with Fentanyl, a highly addictive opiate, while in an operating room awaiting a surgery in which he was to participate. He promptly entered inpatient treatment and, shortly thereafter, temporarily surrendered his license to *1101 practice medicine. Pursuant to the terms of the temporary surrender, petitioner was permitted to later apply for the restoration of his license and, in the event such application was granted, certain minimum conditions would be imposed, including that petitioner must remain drug and alcohol free, be monitored by a health care professional to ensure continuing sobriety, be supervised in his medical practice by a licensed physician and continue in treatment with a health care professional. Notably, the temporary surrender also stated that such terms “are the minimum conditions to be imposed on [petitioner’s] practice upon restoration of [his] license” and that “the Committee may add other terms at the time of license restoration.”
In October 2009, petitioner submitted an application for restoration of his license. Following a hearing, a Hearing Committee of respondent granted the application and restored his license, subject to certain additional conditions. As relevant here, petitioner was permanently restricted from practice specialties where the administration and dispensing of controlled substances is required, such as anesthesiology, pain management, emergency medicine and/or critical care; banned from applying for a Drug Enforcement Agency registration certificate for a period of four years; and, for a period of 10 years, limited to practicing medicine for no more than 40 hours per week, prohibited from engaging in the solo practice of medicine and required to have an on-site supervisor.* Petitioner commenced this CPLR article 78 proceeding challenging the above-mentioned conditions imposed by the Committee on his medical license.
Public Health Law § 230 (13) (a) provides that, upon restoration of a physician’s license to practice medicine, a committee of respondent may “impose reasonable conditions on the licensee, if it determine [s] that due to the nature and extent of the licensee’s former incapacity such conditions are necessary to protect the health of the people.” So long as the Committee’s determination is supported by a rational basis, it will not be disturbed (see Matter of Nehorayoff v Mills, 95 NY2d 671, 675 [2001]; Matter of Dutta v Mills, 301 AD2d 775, 777 [2003]; Matter of Chaudry v Mills, 285 AD2d 849, 850 [2001]). This is so “even if the evidence submitted by petitioner was wholly *1102 uncontroverted’5 (Matter of Nehorayoff v Mills, 270 AD2d 748, 750-751 [2000] [Mercure, J.E, dissenting], revd 95 NY2d 671 [2001]). Guided by these principles, we find no basis upon which to disturb the Committee’s determination.
Since the Committee restored petitioner’s license to practice medicine, it is patently apparent that his substantial efforts towards rehabilitation were considered and credited. Notwithstanding these significant efforts, however, both petitioner’s medical records and his own testimony documented a lengthy and consistent history of illegal drug use. He admitted to using psychedelic and other illicit drugs in high school and college and, over the years, to using various opiates such as Vicodin and Percocet. In 2006, during the last year of his residency, he became addicted to Fentanyl; while he began abusing the drug only at home, his addiction progressed to the point where he was using it while at work and, then, prior to surgeries in which he participated as the anesthesiologist on duty. To sustain his addiction, petitioner stole the drug from his coworkers, over-prescribed it for his own patients and searched the operating rooms, including the waste bins. At the hearing, petitioner candidly acknowledged that, despite his treatment, he still has cravings for and thoughts about Fentanyl.
While petitioner’s witnesses, including his treating psychiatrist, psychologist and the Assistant Director of the Committee for Physicians’ Health who managed his case, all opined that it would be permissible to allow petitioner to return to the practice of anesthesia, each acknowledged the potential for a relapse. In that regard, petitioner’s psychiatrist testified that, as an anesthesiologist, the access that petitioner would have to controlled substances presents a “big increased risk” of relapsing. This concern was clearly shared by the Committee throughout the hearing, particularly with respect to Fentanyl—which was described by petitioner’s case manager as the “most addictive drug” with physical cravings far exceeding other opiates such as morphine. Moreover, petitioner’s recovery period of two years was quite brief, as acknowledged by the Committee, and the record reveals that he attended very few individual therapy sessions once he completed his initial inpatient treatment. Petitioner’s ability and willingness to hide his addiction from his wife, colleagues and patients—and the potential that he could still be abusing the drug if he had not been caught—were also a cause of great concern, particularly given the access he would have to controlled substances if permitted to return to the practice of anesthesiology. Based upon our review of the record, there exists a rational basis for the Committee’s determina *1103 tion that the conditions imposed upon petitioner’s license, including the permanent restriction from practice specialties where the dispensing of controlled substances is required, were both reasonable and necessary to protect the health of the public.
Lahtinen, McCarthy and Egan Jr., JJ., concur.
Adjudged that the determination is confirmed, without costs, and petition dismissed.

 We note that there were other conditions imposed which petitioner does not contest. Notably, with respect to the conditions in effect for a period of 10 years, the restoration order permits petitioner to submit a written request for early termination of those conditions after eight years of monitoring, provided that he has heen fully compliant with all terms and conditions of the order.